IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LINDA CHILDERS, individually, and JUSTIN KAUFMAN, as personal representative of the wrongful death estate of MARK CHILDERS, deceased,

    Plaintiffs,

v.

FEDEX GROUND PACKAGE SYSTEM, INC., d/b/a FEDEX GROUND, a for-profit Delaware corporation; RMP EXPRESS, INC., a for-profit North Carolina corporation; ZAKARIA KHALDI; JOHN DOE; and the NEW MEXICO DEPARTMENT OF TRANSPORTATION,

    Defendants.

No. 1:24-cv-00041-MIS-JFR

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO REMAND

**THIS MATTER** is before the Court on Plaintiffs' Amended Motion to Remand, ECF No. 19, filed March 1, 2024. Defendants FedEx Ground Package System, Inc. ("FedEx Ground") and RMP Express, Inc. ("RMP") filed a Response on March 27, 2024. ECF No. 28. Defendant New Mexico Department of Transportation ("DOT") filed a Response on March 29, 2024. ECF No. 29. Plaintiffs filed a single Reply on April 10, 2024. ECF No. 33.

Upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** in part and **DENY** in part the Motion.

    **I.**    **Background**

On January 3, 2024, Plaintiffs filed a Complaint for Wrongful Death and Loss of Consortium against Defendants in the First Judicial District Court in Santa Fe County, New Mexico. *See* ECF No. 11-1 ("Complaint"). The Complaint alleges that on March 2, 2023, Mark

Childers died in a driving accident on New Mexico highways due to the negligence of Defendants. *Id.* ¶¶ 68-96. The Complaint asserts seven causes of action under New Mexico state law—including claims for negligent hiring, training, and supervision (Count I), vicarious liability (Count II), negligence *per se* (Count III), *res ipsa loquitur* (Count IV), negligence (Count V), negligent entrustment (Count VI), negligent maintenance of a highway (VII), and loss of consortium (Count VIII)—alleging Defendants are liable for Plaintiffs' injuries. *Id.* ¶¶ 97-153.

On January 10, 2024, Defendant DOT, through Deputy Secretary Jessica Cooper, was served a copy of the summons and a copy of the Complaint. ECF No 19-1.  On January 11, 2024, Defendants FedEx Ground and RMP removed the case to this Court based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1 ¶¶ 12-20. On February 9, 2024, Defendants FedEx Ground filed an Amended Notice of Removal in which DOT consented to removal. ECF No. 11 ¶ 4. On March 1, 2024, Plaintiffs filed the instant Amended Motion to Remand in which they also request attorneys' fees and costs. ECF No. 19 at 1, 26-27.

**II.      Legal Standard**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction[.]" *Id.* (citations omitted); *see also Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 (10th Cir. 1999). "Removal statutes are to be strictly construed, and all doubts are to be resolved against removal." *Fajen v. Found. Rsrv. Ins. Co., Inc.*, 683 F.2d 331, 333 (10th Cir. 1982) (citations omitted).

**III.    Discussion**

Title 28, Section 1332 of the U.S. Code provides that "[t]he district courts shall have

original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [] citizens of different States[.]"

In their Motion, Plaintiffs aver that this Court lacks subject matter jurisdiction because "diversity of citizenship . . . is not present" based on two theories: that removal is not permitted under the forum defendant rule, 28 U.S.C. § 1441(b)(2), because DOT is a citizen of the forum state or, in the alternative, diversity is destroyed because DOT is an arm of the State of New Mexico and immune from suit under the New Mexico Tort Claims Act.[1,2] *See* ECF No. 19 at 4-5. Defendants argue that Plaintiffs fraudulently joined DOT. *See* ECF No. 28 at 4-13; ECF No. 29 at 4-9.

Generally, as a threshold matter, if a defendant is fraudulently joined, then courts do not consider their citizenship status in determining diversity jurisdiction. *See Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964). However, Defendants' argument that Plaintiffs fraudulently joined DOT is only relevant if DOT is an arm of the state because the argument is based on a notice requirement when suing the state under the New Mexico Tort Claims Act. *See* ECF No. 28 at 5; ECF No. 29 at 4; *see also* N.M. Stat. Ann. § 41-4-16(B). Therefore, the Court first analyzes

---

[1] Plaintiffs do not dispute that the amount in controversy exceeds $75,000 or that other Defendants are diverse. *See* ECF No. 19 at 1-2; *see also* ECF No. 11 ¶¶ 42-49. Plaintiff Childers is a citizen of Oklahoma, ECF No. 11-1 at 3; Plaintiff Kauffman is deemed a citizen of Oklahoma, *see* ECF No. 11 ¶ 23 (citing 28 U.S.C. § 1332(c)(2)); Defendant FedEx Ground is a citizen of Delaware and Pennsylvania, ECF No. 11 ¶¶ 15, 16 (citing 28 U.S.C. § 1332(c)(1)); Defendant RMP is a citizen of North Carolina, ECF No. 11 ¶¶ 15, 17 (citing 28 U.S.C. § 1332(c)(1)); Defendant Khaldi was not served prior to removal so is not considered in analysis for diversity jurisdiction, *see* ECF No. 11 ¶ 3 (citing 28 U.S.C. § 1446(b)(2)(A)). Therefore, in determining whether the Court has subject matter jurisdiction, Defendant DOT's status is the only issue before the Court. *See Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973).

[2] Plaintiffs raise a "related suit" issue in anticipation of an argument presented by Defendants, ECF No. 19 at 2, but Defendants disclaim any such argument, ECF No. 28 at 3 n.2. Plaintiffs also raise a "snap removal" issue because DOT was served prior to removal and consent to removal was not obtained prior to the initial notice of removal. *See* ECF No. 19 at 1, 3. However, Defendants cured this issue by filing an Amended Notice of Removal within 30 days of service to DOT and including an affidavit confirming DOT's consent to removal. *See* ECF No. 11 ¶ 4; ECF No. 11 at 16.

whether DOT is an arm of the State of New Mexico.

### A. Whether Defendant DOT is a citizen or alter ego of the state.

Plaintiffs argue that unpublished orders in the District of New Mexico find that DOT is a citizen of New Mexico. ECF No. 19 at 17 (citing *Alleman v. Snook*, No. 1:21-cv-00662 -KWR-JFR, 2021 U.S. Dist. LEXIS 178441, at *6 (D.N.M. Sep. 20, 2021)); *Trancoso v. Romero*, No. 1:19-CV-1136 WJ/GBW, 2020 U.S. Dist. LEXIS 32038, at *4 (D.N.M. Feb. 21, 2020). Plaintiffs also argue that the burden is on Defendants as "the removing party to establish the subject-matter jurisdiction of the federal court" and to show that DOT is not citizen. ECF No. 19 at 3, 18 (citing *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1079 (10th Cir. 1999)).

Defendants FedEx Ground and RMP argue that authority is split on whether DOT is a citizen of New Mexico and that the question is a matter of first impression in this District. ECF No. 28 at 17-18. Defendants FedEx Ground and RMP also argue that in a more relevant case, where citizenship status of DOT was at issue, the court found that DOT was not a citizen and instead acted as an alter ego of the state. *See id.* at 18 (citing *N.M. ex rel. Dep't of Transp. v. Qwest Commc'ns Int'l, Inc.*, No. CIV 03-1343 MCA/WDS, 2004 U.S. Dist. LEXIS 34204, at *3 (D.N.M. Mar. 24, 3004)). Notably, Defendant DOT does not address whether it is a citizen of New Mexico in its Response. *See generally* ECF No. 29.

Initially, the Court finds that the Plaintiffs' reliance on *Alleman* and *Trancoso* is unhelpful because in those cases the defendants did not argue that DOT is a citizen of New Mexico or an alter ego of the state. Rather, in both cases the court simply assumed that it was a citizen of New Mexico.[3]

---

[3] In fact, in *Alleman*, the complaint alleged that DOT was a citizen of New Mexico, and the court accepted it as true. 2021 U.S. Dist. LEXIS 178441, at *6.

In any event, "the party invoking diversity jurisdiction bear[s] the burden of proving its existence." *Hennessey v. Univ. of Kans. Hosp. Auth.*, 53 F.4th 516, 532 (10th Cir. 2022) (quoting *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014)). In determining diversity jurisdiction, "once the plaintiff sufficiently alleges and adequately supports that an entity was created in and principally operates within a state, the plaintiff has met her burden and the burden shifts to the entity to demonstrate it is an arm of the state." *Id.*

In their Complaint, Plaintiffs allege that DOT was created in and operates in New Mexico. *See* ECF No. 1-1 ¶¶ 22-23. And in their Motion to Remand, Plaintiffs raise a question of fact as to whether DOT is a citizen of New Mexico. *See* ECF No. 19 at 17-18. Therefore, the Court finds that Plaintiffs have satisfied their burden.

Defendants note that the issue of DOT's status as a citizen or alter ego of the state is undetermined, *see* ECF No. 28 at 17, and ask the Court to adopt the finding in *Qwest* that DOT is an arm of the state, *see* ECF No. 28 at 18 (citing *Qwest*, 2004 U.S. Dist. LEXIS 34204, at *3).

To determine whether an entity is alter ego or arm of the state, the Tenth Circuit undertakes a two-part analysis: "The court first examines the degree of autonomy given to the agency, as determined by the characterization of the agency by state law and the extent of guidance and control exercised by the state. Second, the court examines the extent of financing the agency receives independent of the state treasury and its ability to provide its own financing." *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 574-75 (10th Cir. 1996) (quoting *Haldeman v. State of Wyo. Farm Loan Bd.*, 32 F.3d 469, 473 (10th Cir. 1994)).

The court in *Qwest* applied a thorough factor analysis in reaching its conclusion that DOT is an arm of the state: (1) "NMDOT is anchored to the constitution in a way that other state agencies are not" because the New Mexico Constitution establishes the state highway commission, *Qwest*,

5

2004 U.S. Dist. LEXIS 34204, at *7 (citing N.M. Const. art. V, § 14; N.M. Stat. Ann. § 67-3-6); (2) "no express provision vest[s] NMDOT with the authority to sue or be sued in its own name[,]" *id.* (citing N.M. Stat. Ann. §§ 67-3-1 to -77); (3) despite DOT's broad power to make rules and policy, it is overseen by the state, commissioners serve at the pleasure of the governor, and bonds cannot be issued without approval from the state board of finances, *id.* at *7-8 (citing N.M. Stat. Ann. §§ 67-3-2, 10, 22, 72); (4) state statute authorizes DOT to act on behalf of the state, *id.* at *8-9 (citing N.M. Stat. Ann. §§ 67-3-54 (2003), 71.1 (2001), 12(E) (2003)); the state attorney general appears on behalf of DOT, *id.* at *9 (citing N.M. Stat. Ann. § 67-3-12(E) (2003)); and (6) DOT draws funds from the state treasury, *id.* (citing N.M. Stat. Ann. §§ 67-3-28.2 (1995), 65 (1980)). The Court agrees with this analysis and finds that DOT is an alter ego of the State of New Mexico. *Id.* Therefore, the Court finds that Defendants have satisfied their burden. *See Hennessey*, 53 F.4th at 532.

If an entity is an alter ego of the State of New Mexico, then it is immune from suit in federal court for claims made under the New Mexico Tort Claims Act. *See Bishop v. John Doe 1*, 902 F.2d 809, 810, (10th Cir. 1990) (holding that plaintiff cannot pursue claims against a state agency in federal district court because the New Mexico Tort Claims Act gives exclusive original jurisdiction to state courts); N.M. Stat. Ann. §§ 41-4-4 & 41-4-18; *see also Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894). Therefore, DOT's status as an alter ego of the state destroys diversity if it was properly joined. *See Postal Tel. Cable Co.*, 155 U.S. at 487; *Price v. Wolford*, 608 F.3d 698, 702 (10th Cir. 2010); *Dodd*, 329 F.2d at 85.

### B.  Whether DOT was fraudulently joined.

Fraudulent joinder is found where a "plaintiff joins a 'resident defendant against whom no cause of action is stated' in order to prevent removal under a federal court's diversity jurisdiction."

*Brazell v. Waite*, 525 F. App'x 878, 881 (10th Cir. 2013) (quoting *Dodd*, 329 F.2d at 85). "When this occurs, the district court disregards the fraudulently joined non-diverse party for removal purposes." *Id.*

Defendant DOT argues that it was fraudulently joined because Plaintiffs did not comply with New Mexico Tort Claims Act's notice requirement. ECF No. 29 at 4; *see also* ECF No. 28 at 6-16 (arguing the same). Defendant DOT reasons that "New Mexico courts have noted that crash reports are often provided to DOT for statistical purposes and are not 'actual notice' required by the TCA" and that "there is nothing in the police report to differentiate this crash from the many others in which the drivers are completely at fault."[4] *Id.* at 5, 6. Defendants FedEx Ground and RMP add that "Plaintiffs fail to present any evidence to the Court whatsoever that the NMDOT had actual notice that these plaintiffs [sic] would sue the NMDOT for this accident under the NMTCA." ECF No. 28 at 11.

Recognizing that the written notice sent to DOT on November 16, 2023, falls outside of the six-month notice period, Plaintiffs argue that either (1) DOT had actual notice because state police filed a report that included the time, date, and place of the accident within the six-month notice period or (2) their written notice was timely because the six-month notice period tolled

---

[4] Defendant DOT provides an affidavit from Cynthia Gustafson to confirm the date written notice was received: "Plaintiffs' counsel served a notice of tort claim on DOT on or about November 16, 2023." ECF No. 29 at 3; ECF No. 29-1 at 1-2. Defendants FedEx Ground and RMP contend that this same affidavit proves that "NMDOT never had actual notice of Plaintiff's [sic] tort claim (prior to receiving Plaintiffs' untimely written tort claim notice)." ECF No. 28 at 15. "Whether a state or local government body should be imputed to have received actual notice is a threshold issue to be determined by the trial court." *Galvan v. Bd. of Cnty. Comm'rs for Curry Cnty.*, 261 F. Supp. 3d 1140, 1144 (D.N.M. 2017) (citing *Lopez v. New Mexico*, 1996-NMSC-071, ¶ 16, 122 N.M. 611, 930 P.2d 146. Therefore, Cynthia Gustafson acting as a Manger of Records & Information Management cannot attest to whether DOT received actual notice, and her affidavit is solely used to show that DOT did not receive written notice until on or about November 16, 2023. *See* ECF No. 29-1 at 1.

under the discovery rule.[5] *See* ECF No. 19 at 21, 24; *see also* N.M. Stat. Ann. § 41-4-16(B) ("[N]o court shall have jurisdiction to consider any suit or action against the state or any local public body unless notice has been given as required by this section, or unless the governmental entity had actual notice of the occurrence."); N.M. Stat. Ann. § 41-4-16(C) (notice must be made "within six months after the date of the occurrence of the injury which resulted in the death"). The Court finds that Plaintiffs' claims survive an actual notice analysis, making an analysis for tolling unnecessary.

"To establish [fraudulent] joinder, the removing party must demonstrate . . . inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Dutcher v. Matheson*, 733 F.3d 980, 988 (10th Cir. 2013) (quotation marks omitted). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Id.* (quotation marks omitted). The standard is "more exacting than that for dismissing a claim[,]" and only when defendants have shown with "complete certainty" that recovery is impossible, may the court infer that joinder was fraudulent. *See Hurtado v. AM Transp. Servs., Inc.*, Civ. No. 22-cv-0599-KG-JFR, 2023 WL 5726194, at *3 (D.N.M. Sept. 5, 2023) (quoting *Montano v. Allstate Indem.*, 211 F.3d 1278, 2000 WL 525592, at *2 (10th Cir. 2000) (unpublished table decision)).

Under the New Mexico Tort Claims Act, the State waives its sovereign immunity for tort claims provided that potential plaintiffs deliver timely written notice, or the relevant agency has actual notice "that there exists a 'likelihood' that litigation may ensue." *Lopez v. New Mexico*, 930 P.2d 146, 150 (N.M. 1996) (quoting *Frappier v. Mergler*, 752 P.2d 253, 256-57 (N.M. Ct. App. 1988)). The purpose of the statute is "to ensure that the agency allegedly at fault is notified that *it*

---

[5] Plaintiffs also argue that they should have the opportunity to appeal in state court because "[it] is the proper venue to vindicate the Legislature's clear intent . . . ." ECF No. 19 at 23. The Court need not reach this argument.

8

*may be subject to a lawsuit.*" *Id.* (quoting *City of Las Cruces v. Garcia*, 690 P.2d 1019, 1021 (N.M. 1984)). "When a government entity allegedly at fault has knowledge of the facts and circumstances of the occurrence, it may also have knowledge of its own potential liability." *Sandoval v. Romero*, No. 09CV1028 WJ/ACT, 2011 WL 13289805, *4 (D.N.M. Apr. 12, 2011) (citing *Lopez*, 930 P.2d at 151). A police report may meet the actual notice standard if the purpose and "level of detail in the report" is such that "a reasonable person would have concluded that the victim may claim compensation." *Galvan v. Bd. of Cnty. Comm'rs for Curry Cnty.*, 261 F. Supp. 3d 1140, 1144, 1145 (D.N.M. 2017) (citing *Lopez*, 930 P.2d at 148, 150); *see also Lopez*, 930 P.2d at 150-51 (finding actual notice where the report was prepared for more than statistical purposes and provided date, time, location, list of witness, description of how accident occurred, details on condition of scene, and types of injuries suffered).

The March 3, 2023, police report is fifteen pages long and, as well as providing time, date, and location of the accident, ECF No. 11-5 at 1-2, it includes a two-page narrative and supplemental information not found in all police reports, *id.* at 3-5; a driver log, *id.* at 7; a diagram of the scene that indicates the collision caused gouge marks in the asphalt leading away from the site of impact, *id.* at 9-10; and a dispatch log that indicates the "Highway Dept" was aware of resulting injury and death on the day the collision occurred, *id.* at 13. The report concludes that (1) the crash was caused by "driver #1 crossing into the eastbound lane of traffic"; (2) an "apparent contributing factor[]" was " driver inattention"; and (3) that the driver failed to respond by "going straight[.]" *Id.* at 2, 5 (noting that driver #1 was an unidentified FedEx driver). The Report also notes that the collision occurred before dawn in dark, snowy conditions. *Id.* at 3.

The police report, and supplemental material which included a dispatch call transcript, provided DOT the facts and circumstances of the collision. *See id.* at 1-15. From the report, DOT

9

had knowledge that the collision resulted in injury and death, so they could infer a likelihood of litigation would ensue. *Cf. Frappier*, 752 P.2d at 257 (finding no actual notice that there is a likely claim against defendant when the report did not "indicate that [plaintiff] had complained of any physical injuries as a consequence of the collision"). Additionally, the report notes that "the cause of the crash was due to driver #1 crossing into the eastbound lane of traffic" and "no enforcement action was taken[,]" ECF No. 11-5 at 5, so fault was not determined at the time of the crash but a reasonable person can recognize that a head-on collision does not occur but for someone's action or inaction, *cf. Frappier*, 752 P.2d at 257 (finding no actual notice that there is a likely claim against defendant because "the police report . . . indicated that [plaintiff] was the responsible party"). The driving risks due to reported dark, snowy conditions and driver inattention could reasonably be mitigated by DOT's alleged "acts or omissions: (a) [c]hoosing not to spend the time, money or energy necessary to identify potential hazards facing motorists on this portion of the highway; (b) [c]hoosing not to take action to prevent crossover crashes on Highway 26; and (c) [c]hoosing not to install center line rumble strips to prevent vehicles from crossing over the center line." ECF No. 11-1 ¶ 147. Therefore, DOT possessed knowledge of all the facts and circumstances necessary for a reasonable person to conclude that the plaintiffs likely had a claim against them. *See Galvan*, 261 F. Supp. 3d at 1144 (citing *Lopez*, 930 P.2d at 150).

Because a finder of fact may conclude that DOT had actual notice of the likelihood that it may be subject to a lawsuit, Defendants have not met their burden to show the impossibility of recovery for Plaintiffs' claims. Therefore, DOT was not fraudulently joined, and DOT's status as an alter ego of the state destroys diversity.

Although the Court finds that there is no federal subject matter jurisdiction in this case, it declines to award Plaintiffs attorneys' fees and costs. While 28 U.S.C. § 1447(c) broadly provides

that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal[,]" the Supreme Court has stated: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.,* 546 U.S. 132, 141 (2005). Here, the Court cannot find that removal was objectively unreasonable. Consequently, the Court denies Plaintiffs' request for attorneys' fees and costs.

IV. **Conclusion**

Therefore, it is **HEREBY ORDERED** that:

1. Plaintiff's Motion to Remand to State Court, ECF No. 19, is **GRANTED** in part and **DENIED** in part as follows:

    a. Plaintiff's Motion to Remand to State Court is **GRANTED**; and

    b. Plaintiff's request for attorneys' fees and costs is **DENIED**;

2. The Clerk is instructed to effectuate remand to the First Judicial District Court of Santa Fe County, New Mexico and **CLOSE** the case.

*Margaret Strickland*
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE